IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**09/03/2014**

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| TERRY JOHN CHESTER, | ) | CASE NO. 13-32473-H3-7 |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| TWIN OAKS VILLAGE ASSOCIATES, | ) | ADVERSARY NO. 13-3151 |
| LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| TERRY JOHN CHESTER, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

<u>MEMORANDUM OPINION</u>

The Court held a trial on the First Amended Complaint Opposing Discharge of Debt Under §523 and of Debtor Under §727 (Docket No. 18) filed by Twin Oaks Village Associates, LLC ("TOVA"). After consideration of the pleadings, evidence, testimony, and argument of counsel, the court makes the following findings of fact and conclusions of law and renders a Judgment in favor of TOVA, declaring that Terry John Chester, Defendant, owes TOVA the amount of $65,000 and that this debt is nondischargeable. To the extent that any findings of fact are deemed to be conclusions of law, they are hereby adopted as such. To the extent that any conclusions of law are deemed to be findings of fact, they

are hereby adopted as such.

Findings of Fact

1.     Plaintiff, TOVA, seeks to have this court determine the amount of its claim and that the debt is nondischargeable. TOVA alleges that Chester is personally liable for the amount of $78,000, representing unpaid rent on the lease of real property in addition to the approximate amount of $100,000, representing the value of restaurant related fixtures and equipment that TOVA claims Chester stole.[1]

2.     Plaintiff alleges that the unpaid rent is nondischargeable, pursuant to section 523(a)(2)(B), based upon Chester's use of a materially false financial statement, upon which TOVA relied, to lease the real property.  TOVA also claims that the value of the fixtures and equipment is nondischargeable pursuant to section 523(a)(4) due to Chester's larceny and section 523(a)(6) for willful and malicious injury by Chester to the property of TOVA.  Additionally, TOVA alleges that proof of Chester's larceny and unlawful appropriation of the fixtures and equipment gives rise to Chester's being liable to TOVA under the Texas Theft Liability Act for the items taken, punitive damages, and attorney's fees.

---

[1]Plaintiff's Complaint was initially based upon sections 523 and 727.  The cause of action under section 727 was based upon Plaintiff's belief that Chester provided false information on the bankruptcy petition and schedules. Discrepancies exist between the financial information included on Chester's bankruptcy filings and the financial information he submitted to TOVA in connection with execution of the lease.  In light of Chester's deposition testimony that the financial information related to the lease was false, TOVA advised the court that it does not intend to pursue claims seeking denial of discharge pursuant to section 727.

2

Tex. Civ. Prac. & Rem. Code Ann. §§ 134.001-.005 (Texas Theft Liability Act) and Tex. Penal Code Ann. § 31.03 (Vernon Supp. 2009).

3.   In October 2011, TOVA, through its President, Atta Hussain, rented space at the Twin Oaks Village Shopping Center to M & N Holdings, LLC, for the operation of a restaurant.  Chester, as one of the managing members of M & N Holdings, LLC, executed the lease on the company's behalf and also executed a personal guaranty.  The lease term was from November 1, 2011 to April 30, 2017, with no monthly rent payable until May 1, 2012.  As of May 2012, the monthly rent was $6,500.  Joint Exhibit No. 1.  Chester paid $13,000, representing the first month's rent of $6,500 and a security deposit of $6,500, at the time the lease was executed.

4.   Daniel Tran, a lease broker for 15 years, testified that he leased space for TOVA and was the broker on the instant lease.  Tran testified that the parties agreed that no rent payments would be due from November 2011 through April 2012 in lieu of a tenant's improvement allowance, as the property needed to be upgraded.  The lease states that the condition of the property at the time of its execution was "as is" with HVAC, fixture, furniture and equipment in working condition.

<u>Unpaid Rent</u>

5.   Chester testified that the restaurant was no longer operating by the end of March 2012 and that he filed a voluntary

chapter 7 bankruptcy petition on April 29, 2013.  Chester testified
that the rent that would normally have been paid between April 2012
and his bankruptcy petition date would have been $78,000.   He
testified that no rent was paid from May 2012 through April 2013.

      6.  Chester claims that his payment of $13,000 should be
credited against the amount of the unpaid rent.  This court agrees.
Chester also claims he should receive a credit for expenses he
incurred, beginning in mid October 2011 and throughout the duration
of his operation of the restaurant, for improvements made to the
premises.  Chester claims that he incurred construction costs of
over $135,000, that he spent over $16,500 having the HVAC,
plumbing, and electrical systems brought up to statutory code
requirements, and that he purchased equipment for the restaurant
that had a value of approximately $40,000 to $50,000.  The only
evidence in support of these expenses are invoices from Budget
Restaurant Supply that total approximately $146,648 for furniture
and equipment and bid invoices from Advanced Auction Company that
total approximately $16,750.  Defendant's Exhibit No. 1.

      7.  Although Chester testified as to the amount of the
expenses he incurred to comply with code requirements, no other
evidence was submitted to substantiate these expenses.  Other than
the agreement that no money was due under the lease for 7 months
(from October 2011 through April 2012), the terms of the lease did
not provide for reimbursement for the cost of improvements nor did

it provide for rent reduction in lieu of the cost of improvements.
Joint Exhibit No. 1; Testimony of Chester; Testimony of Hussein.
Chester also testified that the premises were only vacant for four
or five months after the restaurant closed.  He contends that the
unpaid rent owed by him to TOVA should be offset by the amount of
rent paid by new tenants.  Chester did not submit any evidence other
than his testimony in support of this contention.  Hussein testified
that the property was not leased prior to Chester's bankruptcy
filing.  The court finds that Chester is not entitled to a credit
for any amounts expended other than the $13,000 he paid at the time
the lease was executed.  The court finds that Chester owes TOVA the
amount of $65,000 for unpaid rent under the lease.

   8. TOVA claims that the unpaid rent amount is
nondischargeable, pursuant to section 523(a)(2)(B), as Chester used
a materially false financial statement, upon which TOVA relied, to
induce TOVA to lease the property to him.  Tran, TOVA's lease
broker, testified that upon finding a prospective tenant, it was his
practice to give them a blank Application for Commercial Lease and
a blank Personal Financial Statement to complete for submission to
TOVA.  Tran testified that the purpose of having the forms completed
was to obtain information related to the identity, background, and
financial stability of the proposed tenant.  Tran testified that,
on or about October 6 or 7, 2011, he gave both forms to Chester to
be completed.  He testified that, as of October 11, 2011, he did not

Case 13-03151   Document 24   Filed in TXSB on 09/03/14   Page 6 of 13

have the completed forms back from Chester.  Defendant's Exhibit No. 2.

9.   There is a dispute as to the date Chester completed and signed the forms.  The Application is dated October 11, 2011, and the Personal Financial Statement is dated October 10, 2011, notwithstanding the fact that the Statement indicates that the financial information contained therein was as of October 11, 2011. Joint Exhibit No. 2.  Hussein testified that he received the forms from Tran one or two days before October 12, 2011, the date the lease was executed.

10.   Chester testified that he filled out the forms when he met with Tran and Hussein on October 12, 2011 to execute the lease.  Chester testified that all of the financial information he included on the Personal Financial Statement, including the net worth of M & N Holdings, LLC being over $2.7 million, was fabricated, nonexistent and false.  Chester testified that, at that time, the actual net worth of M & N Holdings, LLC was $30,000 and that his own personal net worth was $10,000 to $15,000.

11.   Chester testified that Tran asked him to back date the forms and to enter false information showing that the net worth of M & N Holdings, LLC was over $2.5 million.  Chester testified that, although he could not recall the specific reason Tran gave him for wanting the information falsified, Tran told him that the completed forms were needed for the file in case the "Bank" asked

6

for them.   Chester testified that he did not think the forms were related to the execution of the lease as the terms had previously been agreed upon.

12.   Both Tran and Hussein dispute Chester's testimony. Tran testified credibly that he did not ask Chester to put false information on the forms.   He testified that he would never ask anyone to falsify information.   Tran denied telling Chester that retention of the forms were related to a bank.   Tran testified that he did not know whether the shopping center was mortgaged.   Hussein testified that there was no mortgage on the leased property because Hussein purchased the shopping center with cash he received in a condemnation proceeding.   TOVA Exhibit No. 1.

13.   Hussein testified credibly that he never asked or told Chester to include false information on any of the forms. Hussein testified that, although he wanted a new tenant for the restaurant, he would  not have leased the premises to Chester without the forms having been completed.

14.   The court finds that Chester's version of events is not credible.   Submission of the financial information was required in order to determine whether a prospective tenant would be able to fulfil the financial obligations under the lease.   Testimony of Tran.   Without submission of the financial information, TOVA would not have entered into the lease.   Testimony of Hussein.

15.   Intent to deceive is an essential element of the

false financial statement exception to discharge.  It must be shown that the debtor's alleged false statement in writing was either knowingly false or made so recklessly as to warrant a finding that the debtor acted fraudulently.  *In re Cohn*, 54 F.3d 1108 (3d Cir. 1995).  The debtor's assertions of an honest intent must be weighed against natural inferences from admitted facts.  *In re Eastham*, 51 F.2d 287 (N.D. Tex. 1931).  *See also In re Morrison*, 555 F.3d 473 (5th Cir. 2009).  Chester knew that the information he included in the Application and Statement was false.  The court finds not credible Chester's testimony that he filled out the forms pursuant to the direction of, and with information provided by, either Tran or Hussein.

16.  The court finds that Chester knowingly made a materially false financial statement with the intention to deceive TOVA as to his financial status.  The court further finds that as a result of relying on that information, TOVA leased the restaurant premises to Chester.  The court finds that TOVA sustained its burden of proof in establishing that the debt for the unpaid rent is nondischargeable under section 523(a)(2)(B).

<u>Stolen Fixtures and Equipment</u>

17. When Hussein purchased the shopping center, the restaurant premises included a walk in freezer that was connected to the walls and the ceiling. At the time of the execution of the lease, the restaurant was in operating condition and did not close

8

even though the lessee changed.   Testimony of Hussein.

18.   One morning during the last week of March 2012, it was discovered that all fixtures and equipment that had been on the premises the evening before, including those that were there prior to the lease, had been removed.   There was no sign of forced entry nor were there any notices posted on the door regarding possible repossession.   Testimony of Chester and Hussein.   Chester testified that he did not know what happened and thought perhaps the equipment had been seized because of a lien.   Chester testified that he was unable to obtain funding to replace the equipment and the restaurant closed.

19.   Larceny is the fraudulent and wrongful taking and carrying away of the property of another with intent to convert the property to the taker's use without the consent of the owner. To prove wilful and malicious injury, TOVA must prove that there was actual intent to take an action that resulted in the intended harm or was substantially certain to cause the injury.   *See In re Delaney*, 97 F.3d 800 (5th Cir. 1966).

20.   TOVA alleges that the most likely explanation for the disappearance of the fixtures and equipment was due to Chester's having stolen most of the items.   TOVA's conclusion is based upon the fact that Chester had a key to the property, there was no sign of forced entry, Chester did not deny that the equipment was gone, and he provided conflicting explanations.   Although it was

established that there was no sign of forced entry, TOVA did not
submit any other evidence to prove Chester's involvement.  TOVA did
not prove that only Chester had a key to the property.  There is no
dispute that, on the morning of the discovery, the fixtures and
equipment were gone.  Testimony of Chester, Hussein, and Tran.
Conflicting explanations by Chester as to what may have happened is
not proof of larceny or theft.  The court finds that TOVA's
conclusion that Chester committed larceny of, or caused wilful or
malicious injury to, the missing property is speculative, at best,
and is not supported by evidence.

21.  The court finds that TOVA failed to submit sufficient
evidence to establish that Chester, or someone at his direction,
stole the fixtures and equipment.  The court finds that TOVA failed
to sustain its burden of proof to establish that Chester engaged in
larceny or that Chester caused wilful or malicious injury to TOVA
in connection with the missing fixtures and equipment.  The court
finds that TOVA failed to prove that Chester is liable for the value
of the missing fixtures and equipment.  In light of these findings,
Chester is also not liable to TOVA under the Texas Theft Liability
Act.  As such, the issue of dischargeability of the value of the
missing fixtures and equipment is moot.

Conclusions of Law

1.  Section 523 is governed by a preponderance of the
evidence burden of proof.  The creditor is required to show that his

10

debt falls within one of the exceptions identified in this section. *Grogan v. Garner*, 498 U.S. 279 (1991).

2. A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by use of a statement in writing: (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.  11 U.S.C. § 523(a)(2)(B).

3. Elements of fraud under 523(a)(2) are stated as: that the debtor made the representation; that at the time he knew that they were false; that he made them with the intention and purpose of deceiving the creditor; that the creditor relied on such representation; and that the creditor sustained the alleged loss and damage as the proximate result of the representation made.  See *In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *In re Miller*, 5 B.R. 424 (Bankr. W.D.La. 1980); *In re Pommerer*, 10 B.R. 935 (Bankr. D.C. Minn. 1981); *In re Smith*, 113 B.R. 297 (N.D.Tex. 1990); *Matter of Church*, 69 B.R. 425 (N.D.Tex. 1987).

4. Section 523(a)(4) provides that a debtor is not discharged from a debt "for fraud or defalcation while acting in a

11

fiduciary capacity, embezzlement, or larceny." This discharge exception "was intended to reach those debts incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts; both classes of conduct involve debts arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v. Abrams (In re Miller)*, 156 F.2d 598 (5th Cir. 1998); *Tex. Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339 (5th Cir. 1998); *Boyle v. Abilene Lumber, Inc. (In re Boyle)*, 819 F.2d 583 (5th Cir. 1987).

5.    Section 523(a)(6) of the Bankruptcy Code states that "[a] discharge ... does not discharge a debtor from any debt - for willful and malicious injury by the debtor to another entity or to the property of another entity." "Willful" as used in 523(a)(6) means deliberate or intentional; "malicious" means in conscious disregard of one's duties, or without just cause or excuse, and does not require ill will or specific intent to do harm; the "reckless disregard" standard is not sufficient grounds to hold conduct "willful and malicious." *In re Dean*, 79 B.R. 659 (Bankr. N.D. Tex. 1987). 4 Collier on Bankruptcy ¶ 523.16 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.).

6.    The Texas Theft Liability Act provides that a person who commits theft is liable for the damages resulting from the theft. A person who has sustained damages resulting from theft may recover from a person who commits theft, the amount of actual

damages found by the trier of fact and, in addition to actual damages, damages awarded by the trier of fact in a sum not to exceed $1,000. Each person who prevails in a suit under this statute shall be awarded court costs and reasonable and necessary attorney's fees.

Based upon the above findings of fact and conclusions of law, the court will enter a separate Judgment in conjunction herewith declaring that Chester owes TOVA the amount of $65,000 and that this debt is nondischargeable pursuant to section 523(a)(2)(B).

Signed at Houston, Texas this 3rd day of September, 2014.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

13